*In re* SUMMARY SUSPENSION OF DRIVER'S LICENSE OF OMER A. RAMOS (The People of the State of Illinois, Petitioner-Appellee, v. Omer A. Ramos, Defendant-Appellant).

Fourth District   No. 4—86—0602

Opinion filed May 14, 1987.

Fellheimer, Fellheimer, O'Dell, Travers & Luckman, Ltd., of Pontiac (Carey J. Luckman, of counsel), for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Defendant, Omer Ramos, appeals from an order of the circuit court of Livingston County denying his petition to rescind the summary suspension of his driver's license, which petition was filed pursuant to section 2—118.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1).

The State failed to file a timely brief, and, upon motion of the defendant, we determined to proceed on the appeal without it. The pertinent facts are simple, and the allegations of error can be decided without such assistance. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.

On March 22, 1986, defendant was arrested for driving while under the influence of alcohol. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.) He agreed to take a breathalyzer test and did take the test. The regulations pertaining to the operation of the breathalyzer machine require a 20-minute period of observation prior to administering the test. After a full 20 minutes of observing defendant, the trooper charged with administering the test attempted to take defendant's breath sample. Unfortunately, the trooper had forgotten to reset the machine for a breath sample after taking the required control sample of room air. The trooper had to spend some six minutes resetting the machine to accept a breath sample. His testimony at the "implied consent" hearing was that he spent the six minutes focusing his attention primarily on the machine and not the defendant, although the defendant was within his peripheral vision. There were no water fountains or food in that area, and the trooper smelled no smoke. He did not see any vomit to indicate defendant had regurgitated. The trooper did not stand and stare at the defendant as he had for the 20 minutes prior to attempting the test, but he had occasion to see defendant as he worked to reset the machine. Defendant was seated five to seven feet away from the machine and did not leave the area during the six-minute period. The test resulted in a reading of .21.

Defendant received confirmation from the court that his driver's license would be suspended. He filed a petition to rescind the summary suspension pursuant to section 2—118.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1). Along with this petition, he filed a motion for declaration of unconstitutionality. At the hearing, defendant moved to have the test results stricken on the ba-

sis of the six-minute gap in observation prior to administering the test. The court denied the petition finding the arresting officer had reasonable grounds to believe defendant to be under the influence of alcohol. The court also denied both of defendant's motions.

On appeal, defendant raises two alleged errors: (1) the trial court erred in denying the motion to strike the test results as the six minutes of noncontinuous observation prior to administration of the breathalyzer test is a failure to comply with the mandatory operating procedures; and (2) the summary suspension procedure encompassed in the Illinois Vehicle Code is unconstitutional.

Section 11—501.2(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)(1)) requires that chemical analysis of a person's breath be conducted according to standards set by the Department of Public Health. One of the standards is a 20-minute period of observation prior to administering the breath-analysis test:

> "Procedures for breath alcohol analysis shall include the following requirements in conjunction with the testing of each subject:
>
> (a) Continuous observation of the subject for at least twenty (20) minutes prior to collection of the breath specimen, during which period the subject must not have ingested alcohol, food, drink, regurgitated, vomited or smoked." (77 Ill. Admin. Code 510.60 (1985).)

We recently reaffirmed that compliance with the standards is mandatory, and the admissibility of alcohol test results will be denied for failure to comply. *People v. Haney* (1987), 155 Ill. App. 3d 44.

█ In the instant case, we find no substantial error such that the test results should be stricken. The six minutes where the trooper was concentrating on resetting the machine rather than simply standing and staring at the defendant do not indicate a serious failure to comply with the required standards and procedures. The defendant was observed for a full 20 minutes prior to the first attempt at a breath sample. The trooper testified the defendant was seated in a chair in a long hallway at the State Highway Patrol Headquarters. There was no food or a water fountain nearby. The defendant did not smoke or regurgitate during that 20-minute period. During the six minutes when the trooper was resetting the machine, defendant was again seated in the hallway. He did not leave the area during the six minutes. The trooper noticed no smoke or vomit in the area. Defendant took nothing, such as gum, out of his mouth prior to taking the test. Defendant was observed periodically as the trooper moved about the machine and was constantly within the peripheral vision of the

trooper. The trial court found that this constituted substantial compliance with the standards promulgated by the Department of Public Health. We agree. On the record before us, we find no error.

■ The defendant's second allegation of error is more complex. He advances two arguments that the statutory suspension scheme is unconstitutional. Defendant first argues that the scheme violates the equal protection guarantees of the Illinois and United States constitutions (Ill. Const. 1970, art. I, sec. 2; U.S. Const., amend. XIV) because it applies to the driver under the influence of alcohol and not the driver who is under the influence of drugs or a combination of drugs and alcohol. Section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501) makes it illegal to drive a motor vehicle under certain stated conditions: (1) having a blood-alcohol concentration of .10 or more; (2) driving under the influence of alcohol; (3) driving under the influence of any other drug which renders one incapable of safely operating a motor vehicle; and (4) driving under the influence of any combination of alcohol and drugs such that one is incapable of driving safely. Section 11—501.1(a) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(a)) provides that one is deemed to have given consent to tests which will determine the amount of alcohol or other drugs or a combination of alcohol and other drugs in one's blood. Section 11—501.1(d) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(d)) states that one's license will be summarily suspended if one refuses testing or if one submits to a test and the result is a blood-alcohol concentration of .10 or greater. The suspension scheme does not affect the driver who has drugs other than alcohol in his system. It is this "discrimination" against the driver with blood-alcohol content greater than .10 to which defendant objects.

We may respond simply. As defendant has identified no fundamental right encroached on by the summary suspension scheme, the legislature need only have some rational and reasonable basis for setting up this classification. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477, 468 N.E.2d 1162, 1166-67; *People v. Mourillon* (1984), 124 Ill. App. 3d 218, 220-21, 463 N.E.2d 1337, 1339.) Further, the legislature may even differentiate among those similarly situated as long as there is a rational basis for doing so. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477, 468 N.E.2d 1162, 1166-67.) The statutory summary suspension scheme is "an administrative function of the Secretary of State, designed to protect the persons who travel the highways." (*Koss v. Slater* (1987), 116 Ill. 2d 389, 395.) Also, "[t]he legislature need not attack all aspects of a given harm at once, but is instead free to address only part of a particular problem." (*People ex rel. Skinner v.*

*Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 262, 500 N.E.2d 34, 38.) Under this summary suspension scheme, the legislature has chosen to focus particularly on those who use alcohol excessively and then drive. The legislature may do so simply because of the tremendous hazard drunk drivers pose to our society. Our courts have recognized the serious threat to human life and well-being posed by drunk drivers. (*People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101, 110, 492 N.E.2d 187, 191, *cert. denied* (1986), 479 U.S. ____, 93 L. Ed. 2d 288, 107 S. Ct. 314; see also *South Dakota v. Neville* (1983), 459 U.S. 553, 557-59, 74 L. Ed. 2d 748, 755, 103 S. Ct. 916, 919-20.) This is not to say that those who use other drugs to the point where their driving abilities are impaired should be free from punishment. They are not. They are subject to the provisions of section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501), which makes driving under the influence of other drugs than just alcohol a Class A misdemeanor. The statutory summary suspension scheme is not a violation of the equal-protection guarantees of the United States Constitution or of the Illinois Constitution.

■ Defendant's second constitutional argument is that the statutory summary suspension scheme violates the due-process guarantees because it unfairly punishes the drunk driver who complies with a request to take a chemical test. Defendant states that the summary suspension scheme was enacted to provide the courts with objective evidence while preserving the due-process rights of the offender. (*People v. Kiss* (1984), 122 Ill. App. 3d 1056, 462 N.E.2d 546; *People v. Malloy* (1980), 83 Ill. App. 3d 344, 403 N.E.2d 1221.) He argues that the procedure for suspending the license of one who complies with the testing, but whose test results in a blood-alcohol concentration greater than .10, is nothing more than punishment for complying with the law and providing the objective evidence. Such punishment, continues defendant, flies in the face of the stated purpose. We disagree with defendant's reasoning.

We accept the idea that the purpose of the statutory summary suspension scheme is to obtain objective evidence while preserving the due-process rights of the offender. (*Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612; *People v. Malloy* (1980), 83 Ill. App. 3d 344, 403 N.E.2d 1221.) In *Mackey,* the Supreme Court upheld a similar statutory suspension scheme in force in the Commonwealth of Massachusetts as being in line with due-process requirements. One notable difference between the Massachusetts scheme and the Illinois scheme was that in Massachusetts no statutory suspension resulted if one complied with the requests to take a chemical test. The

Supreme Court noted this was an act of grace by the Massachusetts legislature. (*Mackey v. Montrym* (1979), 443 U.S. 1, 18-19, 61 L. Ed. 2d 321, 335, 99 S. Ct. 2612, 2621.) Thus, the Supreme Court held that the procedures involved in the statutory suspension scheme fulfilled the requirements of due process. In the instant case, defendant does not challenge the procedures *per se*, he challenges the purpose of suspending a driver's license if the driver complies with the procedures.

The summary suspension scheme has as its overarching purpose the protection of those who travel on our highways. (*Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612; *Koss v. Slater* (1987), 116 Ill. 2d 389.) If one complies with the requirement to take a chemical test, the risks of an erroneous deprivation of one's license are minimal. The tests given are scientific and accurate. In *Mackey*, the argument was raised that because the Commonwealth of Massachusetts chose not to summarily suspend those who take a chemical test which indicates the driver was driving while intoxicated, it was a violation of due process to suspend the licenses of those who refused to take the test. This argument was rejected. The converse of that argument is now presented to us. Because the State of Illinois suspends those who take the test as well as those who refuse, the scheme is a violation of due process. We similarly reject this argument. The State's compelling interest in highway safety justifies suspending one's license for taking a chemical test and obtaining a result which shows legal intoxication.

For the above reasons, the order of the circuit court of Livingston County is affirmed.

Affirmed.

SPITZ, P.J., and KNECHT, J., concur.