2007 WY 90

**J.D. PETERSON, Appellant (Petitioner),**

v.

**WYOMING DEPARTMENT OF TRANSPORTATION, DRIVERS' LICENSE DIVISION, Appellee (Respondent).**

No. 06–209.

Supreme Court of Wyoming.

May 30, 2007.

---

Representing Appellant: Mike Cornia, Evanston, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Robin Sessions Cooley, Deputy Assistant Attorney General; and Douglas J. Moench, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] After being arrested for driving while under the influence, the Wyoming Department of Transportation (WYDOT) notified appellant J.D. Peterson (Peterson) that his driver's license would be suspended. Peterson requested a contested case hearing before the Office of Administrative Hearings (OAH). The hearing officer upheld the suspension, as did the district court. Peterson now appeals. We affirm.

## ISSUE

[¶ 2] Peterson presents the following issue:

Was the decision of the hearing officer arbitrary and capricious and contrary to the law?

The State phrases the issue another way:

Whether the hearing examiner acted arbitrarily and capriciously in considering the breath test results?

## FACTS

[¶ 3] In the early morning hours of December 5, 2004, Officer Kenneth Pearson observed a vehicle crossing the center lane markers and weaving in and out of its primary lane of travel. Officer Pearson stopped

the vehicle and identified the driver as J.D. Peterson. While speaking with Peterson, the officer became suspicious that Peterson had been drinking. He detected a strong odor of alcohol on Peterson's breath, noticed that his eyes were watery, and discerned that his speech was slurred. Also, Peterson admitted to drinking "a few beers" earlier that evening.

[¶ 4] Peterson agreed to submit to field sobriety tests, although he notified the officer that he had recently undergone knee replacement. Peterson failed all four sobriety tests administered: the Horizontal Gaze Nystagmus, the Finger Count, Counting Numbers Backwards, and Reciting the Alphabet. After administering a portable breath test, which registered Peterson's blood alcohol content at .32, four times the legal limit, the officer placed Peterson under arrest for driving while under the influence. Wyo. Stat. Ann. § 31–5–233(b)(i) (LexisNexis 2005).

[¶ 5] Upon having his blood drawn at the Evanston Regional Hospital, Peterson was then transported to the Uinta County Jail. Officer Pearson read Peterson his Implied Consent advisement, after which Peterson agreed to provide breath samples for analysis of his blood alcohol content. In accordance with Department of Health Rules and Regulations, and according to the Sobriety Examination Report, the arresting officer observed Peterson for a minimum of fifteen minutes before administering the test, from 1:25 a.m. to 1:40 a.m. During the observation period, however, the officer's notes substantiated that the Intoximeter EC/IR machine was started at 1:39 a.m. Another officer entered Peterson's pertinent information into the machine. Officer Pearson then calibrated the machine, and finally he performed Peterson's breath tests. Consequently, the first test was recorded at 1:45 a.m., with a result of 0.299%, with the second and final test being conducted at 1:47 a.m., with a result of 0.283%.

[¶ 6] Peterson was notified that WYDOT recommended suspension of his driver's license for ninety days in accordance with Wyo. Stat. Ann. § 31–6–102 (LexisNexis 2005). On December 9, 2004, Peterson requested a contested case hearing, which was eventually held on March 22, 2005. While Peterson did not appear personally at the hearing, he was represented by counsel, who argued on his behalf that although the fifteen-minute observation period was properly executed, it was improper that another five minutes elapsed prior to the test being administered. Said another way, Peterson believed that there was a non-observation period of five minutes which negated the results of the test. The hearing officer disagreed, and issued an order in which he concluded that Peterson's suspension should be upheld, and that the five-minute period was allowable.

[¶ 7] Peterson appealed to the district court, seeking review of whether or not the breathalyzer test was performed in accordance with Department of Health regulations. Particularly, Peterson argued that the five-minute gap between the requisite observation period and the actual administration of the test was improper. Concluding that the five-minute gap was proper, the district court affirmed, and this appeal followed.

## STANDARD OF REVIEW

[¶ 8] This Court affords no special deference to district court decisions when it reviews matters initiated before an administrative agency. Rather, we review the case as if it came directly from the administrative agency. *Bradshaw v. Wyoming Dept. of Transp., Drivers' License Div.*, 2006 WY 70, ¶ 10, 135 P.3d 612, 615 (Wyo.2006). The scope of our review is defined by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides as follows:

§ 16–3–114. **Judicial review of agency actions; district courts.**

. . . .

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule

of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

▬▬ [¶ 9] Where both parties present evidence at an administrative hearing, we review the entire record to determine if the agency findings are supported by substantial evidence. *Bush v. State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo.2005). Substantial evidence in this context is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can conclude a reasonable mind might accept the evidence as adequate to support the agency findings. *Id.*

## DISCUSSION

▬▬ [¶ 10] In his only argument, Peterson contends that because he was not strictly observed for fifteen minutes prior to having his breath analyzed for alcohol content, the hearing examiner should have excluded the breathalyzer test conducted at the police station. Peterson believes that there should be strict compliance with Department of Health Rules and Regulations for purposes of conducting station-house breathalyzer tests. The State disagrees, and believes that Peterson was properly observed prior to the administration of the test, thus justifying the

hearing examiner's reliance on the test results.

[¶ 11] Wyo. Stat. Ann. § 31–6–105(a) (LexisNexis 2005) sets forth the exclusive means and the mandatory procedure for determining an arrested suspect's blood alcohol level.

**§ 31–6–105. Method of performing chemical analysis; persons permitted to draw blood; request by arrested person for test; information made available; evidence of refusal to take test.**

(a) Chemical analysis of the person's blood, breath or urine to be considered valid under this section, shall be performed according to methods approved by the department of health and by an individual possessing a valid permit to conduct the analysis. Permits shall be issued by the department of health for this purpose. The department of health may promulgate and approve satisfactory methods in order to ascertain the qualifications of individuals permitted to conduct the analysis and shall issue to qualified individuals permits which are subject to termination or revocation by the department of health.

*Also see Nellis v. Wyoming Dep't of Transportation*, 932 P.2d 741, 745 (Wyo.1997).

[¶ 12] Specifically, the Department of Health Rules and Regulations provide in pertinent part:

Section 1. Procedural controls.

(a) Analytical procedures for breath alcohol analysis should include the following controls in conjunction with the testing of each subject:

(i) Subject must be observed for a minimum of fifteen (15) minutes prior to testing to prevent residual mouth alcohol. All foreign material (except dentures) must be removed from the mouth at the start of observation period and subject must not be allowed to smoke, eat, drink, or place anything in their oral cavity etc. If the subject vomits or regurgitates, the observation period must be restarted after rinsing the mouth with water. A dry burp or belch will not affect the test; therefore, the observation time can continue.

*Department of Health, Rules and Regulations for Chemical Analysis for Alcohol Testing,* Chapter III, § 1(a)(i) (2004). The purpose of the Department of Health's Rules is "[t]o insure scientific validity and uniform standards of practice for chemical analysis of alcohol." *Id. at* Chapter I, § 2.

[¶ 13] Here, Peterson admits, and the record clearly shows, that in compliance with the above-stated rule, the officer began observing Peterson at 1:25 a.m. and continued to do so until at least 1:40 a.m., fulfilling the fifteen-minute requirement noted. However, because Peterson's first breath test occurred at 1:45 a.m., a full twenty minutes after the observation period began, Peterson contends that he was not observed in accordance with the rules, thus the test was invalid and cannot serve as a basis for suspending his driver's license.

[¶ 14] Unfortunately, we are without the benefit of live testimony in this case. However, we are comfortable that the record on appeal sufficiently establishes that Peterson was observed for the required amount of time, and comfortable too that the subsequent five minutes did not invalidate the test. Here, the Intoximeter EC/IR machine was turned on at 1:39 a.m. by Officer Pearson. Another officer then typed Peterson's relevant information into the machine, *e.g.,* name, gender, date of birth, and driver's license number. The machine was also calibrated prior to Peterson's first breath test at 1:45 a.m. by turning out two blank readouts. There is no indication on the record that Officer Pearson did not continue to observe Peterson while readying the Intoximeter EC/IR machine, nor is there any indication on the record that any change of positioning took place by either Peterson or Officer Pearson, allowing this Court to infer that the same conditions of observance existed for the full twenty-minute time period.

[¶ 15] Compliance with observation rules does not require an officer to fix his stare on the subject. In *Glasmann v. State, Dept. of Revenue, Motor Vehicle Div.,* 719 P.2d 1096, 1097 (Colo.App.1986), the court interpreted a regulation requiring that an officer "closely and continuously observe the subject" for twenty minutes prior to the administration of a breath test. The officer in *Glasmann,* during the twenty-two minutes directly preceding the breath test, completed a custody report, a summons, and a notice of revocation in front of the defendant. The court concluded that the officer had complied with the regulation's requirement of close and continuous observation and held that the regulation did not require in all cases that the officer "stare fixedly" at a test subject for twenty minutes. *Id.*

[¶ 16] Also, in *State v. Smith,* 16 Conn. App. 156, 547 A.2d 69, 73 (1988), the court held that a regulation requiring "continuous observation" must be interpreted with reference to the purpose of the regulation. The court stated:

> The regulation, read it its entirety, indicates that the purpose is to determine whether the subject to be tested has ingested food, beverages, regurgitated or smoked. These activities adversely affect the accuracy of alcohol breath analysis. They are activities which do not require observation without cessation in order to determine if they have occurred.
>
> . . . .
>
> In light of the regulation's purpose, we do not interpret [it] to require that an officer fix his unswerving gaze upon a subject during each fifteen minute interval prior to administration of a breath test. Such an interpretation would not only be practically impossible to perform but would allow a subject to thwart compliance with the regulation simply by turning his head away from the observing officer. Where, as here, evidence shows that a defendant was in an officer's presence for at least a period of fifteen minutes and that the defendant did not ingest food or beverages, regurgitate or smoke, the requirement of "continuous observation" . . . has been complied with.

*Smith,* 547 A.2d at 73 (citations omitted).

[¶ 17] Especially similar to the present case is, *In re Ramos,* 155 Ill.App.3d 374, 108 Ill.Dec. 323, 508 N.E.2d 484 (1987), in which the defendant claimed that his breath test results should have been suppressed because, for the six minutes directly prior to administration of the test, the trooper was resetting the breath-test machine. The court refused

to strike the results, stating that "the six minutes where the trooper was concentrating on resetting the machine rather than simply standing and staring at the defendant do not indicate a serious failure to comply with the required standards and procedures." *Id.,* 108 Ill.Dec. 323, 508 N.E.2d at 486.

[¶ 18] Here, as in *Ramos,* there was compliance with required standards and procedures. There is no indication from the officer's report that he stopped observing Peterson during the time preceding his breath test. The officer had observed Peterson for a minimum of fifteen minutes before the test and had another officer enter Peterson's information into the breath machine. The fact that the officer may not have stared at Peterson the entire time does not render his compliance with the mandatory observation period invalid.

[¶ 19] Peterson encourages this Court to adopt a "strict compliance" policy with the rules governing the administration of alcohol tests. Indeed, we agree that without compliance with the Rules, there can be no uniformity. However, in this case, we do not and cannot read into the rule stated above that an extra five-minute period immediately following the requisite fifteen-minute observation period renders the subsequent breathalyzer test invalid. Furthermore, we are reticent to state a strict compliance policy due to the variable nature of these types of cases. Instead, compliance is a question of fact to be decided under the circumstances of each case. In this particular case, the State's prima facie showing of compliance with the regulation is sufficient. *Williford v. State,* 284 Ark. 449, 683 S.W.2d 228 (1985) (holding), and *Glasmann,* 719 P.2d at 1097.

[¶ 20] We conclude that substantial evidence supported the hearing officer's conclusion that the five minutes in question were allowable "to prepare the machine," and that the proposed suspension should be upheld. The order of the district court affirming the decision made by OAH is affirmed in all respects.