# Illinois Official Reports

## Appellate Court

---

### *People v. Chiaravalle*, 2014 IL App (4th) 140445

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RYAN J. CHIARAVALLE, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-14-0445 |
| Filed | December 19, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for driving under the influence of alcohol, the trial court erred in granting defendant's motion *in limine* to exclude the results of his breath-analysis test on the ground that the arresting officer failed to substantially comply with the 20-minute observation period before the test was administered when the evidence showed that the officer was in the same room with defendant during the period, but he did paperwork with his back toward defendant for minutes at a time, and the officer stated that he turned around "every once in a while," since the officer had searched defendant before he was taken to the jail for the test and did not find any alcohol or mouthwash, the officer and defendant were alone during the observation period, defendant was told not to do anything to bring alcohol to his mouth and the officer did not see any evidence of vomiting or regurgitation, and under the circumstances, the officer's observation of defendant through the full use of his senses did not make the breath test unreliable and any failure to strictly comply with the observation requirement was *de minimis*, as in *Ebert*. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 14-DT-06; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Reversed; cause remanded for further proceedings. |

Counsel on
Appeal

Seth Uphoff, State's Attorney, of Pontiac (Patrick Delfino, David J. Robinson, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

W. Keith Davis, of Law Office of W. Keith Davis, of Bloomington, for appellee.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Harris and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1      In January 2014, defendant, Ryan J. Chiaravalle, was charged by traffic citations with driving under the influence of alcohol (DUI) and driving with a blood-alcohol content of 0.08 or more. In May 2014, the trial court granted defendant's motion *in limine* regarding the results of a Breathalyzer test, and the State filed a certificate of substantial impairment.

¶ 2      On appeal, the State argues the trial court erred in granting defendant's motion *in limine* to bar the results of the breath-analysis test. We reverse and remand for further proceedings.

¶ 3                              I. BACKGROUND

¶ 4      In January 2014, defendant was charged by traffic citations with DUI (625 ILCS 5/11-501(a)(2) (West 2012)) and driving with a blood-alcohol content of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2012)). In February 2014, defendant entered a plea of not guilty.

¶ 5      Also in February 2014, the Illinois Secretary of State issued a suspension of defendant's driver's license. Defendant filed a request for a hearing and a petition to rescind the statutory summary suspension. In part, defendant argued the arresting officer failed to properly administer the breath test.

¶ 6      In March 2014, Judge Mark Fellheimer conducted a hearing on the petition to rescind the statutory summary suspension. Pontiac police corporal Brad Baird testified he stopped defendant's vehicle during the early morning hours of January 19, 2014, because its headlights were not on. While asking defendant for his license and insurance card, Baird detected an odor of an alcoholic beverage coming from defendant's breath. He also stated defendant's speech "seemed somewhat slow" and "his eyes were bloodshot and glassy." Due to the cold weather, defendant agreed to be transported to a fire station to undergo field-sobriety testing. After the tests, Baird arrested defendant for DUI. After reading the statutory warning to motorists, defendant agreed to submit to breath testing.

¶ 7      Baird conducted the breath test at the Livingston County jail. He described the room as having a bench on one side and a countertop on the other. There is also "a separate kind of a room that's divided by a wall that covers three-quarters across the room; and then the breath test machine is actually inside that smaller room." Baird stated he was alone with defendant during the entire observation period. Baird told defendant he "could not do anything which

might bring alcohol to his mouth, which would be belching or vomiting or anything like that." Baird stated he completed his citations and paperwork while defendant sat on the bench behind him. Baird did not recall the amount of time it took to complete the paperwork but stated it "usually takes 10 minutes." During the 20-minute observation period, Baird turned around "every once in awhile," meaning "every few minutes probably." Baird did not hear any unusual noises coming from behind him and did not see any evidence of vomiting or regurgitation. After he finished his paperwork, Baird had a conversation with defendant. He did not recall defendant coughing and would not have conducted the test had he done so.

¶ 8       At the conclusion of the observation period, Baird typed information into the Breathalyzer machine and placed a new mouthpiece into the machine. Defendant then provided a breath sample. The machine indicated a sufficient air sample had been reached.

¶ 9       In making its ruling, the trial court stated, in part, as follows:

"I just have an officer that did not comply with the twenty-minute observation. He had his back to him for minutes at a time. And, as I said before, when it was just bringing this topic up when we finished the hearing, I would be extending that twenty-minute observation period, the line of sight cases that I have been dealt with to a new arena that would simply say that the officer didn't hear the person do anything, which is then eating up the entire rule, first and foremost, which would not be the purpose here of what we are doing.

So, based on that, I will find that foundation for the test was not met, that the observation period failed under any set of circumstances. And, therefore, I will grant the petition to rescind the statutory summary suspension."

The court later denied the State's motion to reconsider.

¶ 10       In May 2014, defendant filed a motion *in limine* regarding the Breathalyzer test administered to him following his arrest. Defendant argued the lack of substantial compliance during the 20-minute observation period rendered the test result inadmissible as evidence in his criminal trial.

¶ 11       At a hearing on the motion *in limine* before Judge Jennifer Bauknecht, the State's evidence included the transcripts of the summary-suspension hearing before Judge Fellheimer. Judge Bauknecht adopted the reasoning of Judge Fellheimer, stating there had been no substantial compliance with the 20-minute observation period. Accordingly, the trial court granted defendant's motion *in limine*. Thereafter, the State filed a certificate of substantial impairment. See Ill. S. Ct. R. 604(a)(1) (eff. Feb. 6, 2013). This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13       On appeal, the State argues the trial court erred in granting defendant's motion *in limine* to bar the breath-analysis test, claiming the officer substantially complied with the 20-minute observation period through the use of all of his senses. We agree.

¶ 14                              A. Standard of Review

¶ 15       "In general, a trial court's decision to grant a motion *in limine* will not be disturbed on review absent an abuse of discretion." *People v. Clairmont*, 2011 IL App (2d) 100924, ¶ 11, 961 N.E.2d 914. However, in this case, the State's argument centers on whether the trial court properly excluded the evidence of the breath-test results based on the applicable administrative

regulations and case law. Thus, as the facts are not in dispute and a question of law is involved, our review is *de novo*. *Clairmont*, 2011 IL App (2d) 100924, ¶ 11, 961 N.E.2d 914; see also *People v. Ebert*, 401 Ill. App. 3d 958, 960-61, 931 N.E.2d 279, 280-81 (2010) (stating the question of whether the State laid a sufficient foundation for the admission of breath-test results by substantially, but not strictly, complying with administrative regulations was a question of law subject to *de novo* review).

¶ 16                                   B. Breath-Alcohol Tests

¶ 17      "When a motorist files a motion *in limine* to bar breath test results, the State must establish a sufficient foundation for the admission of the evidence." *Clairmont*, 2011 IL App (2d) 100924, ¶ 12, 961 N.E.2d 914 (citing *Ebert*, 401 Ill. App. 3d at 960, 931 N.E.2d at 280). To lay a proper foundation, the State must establish the breath test was performed in accordance with section 11-501.2(a) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(a) (West 2012)) and regulations promulgated by the Illinois Department of State Police. *Clairmont*, 2011 IL App (2d) 100924, ¶ 12, 961 N.E.2d 914. "Failure to comply with section 11-501.2(a) and the regulations renders the results of the test unreliable and, thus, inadmissible." *Clairmont*, 2011 IL App (2d) 100924, ¶ 12, 961 N.E.2d 914.

¶ 18      Section 1286.310(a) of Title 20 of the Illinois Administrative Code (20 Ill. Adm. Code 1286.310(a) (2004)) sets forth the procedures to obtain a breath sample in determining a subject's breath-alcohol content, as follows:

"(a) Prior to obtaining a breath analysis reading from a subject, the [breath-analysis operator] or another agency employee shall continuously observe the subject for at least 20 minutes.

(1) During the 20 minute observation period the subject shall be deprived of alcohol and foreign substances and shall not have vomited.

(2) If the subject vomits during the observation (deprivation) period, the process shall be started over by having the individual rinse the oral cavity with water.

(3) If the individual continues to vomit, alternate testing shall be considered."

¶ 19      In regard to the 20-minute observation period, Illinois courts have found substantial rather than strict compliance is necessary to meet the requirement. *Ebert*, 401 Ill. App. 3d at 963, 931 N.E.2d at 283 (stating for a proper foundation, "it is necessary to establish only that the test was performed in substantial compliance with the Department's standards"); see also *People v. Bergman*, 253 Ill. App. 3d 369, 373, 623 N.E.2d 1052, 1055 (1993) (stating that "with respect to the 20-minute observation period, only substantial and not strict compliance is required"); *In re Summary Suspension of Driver's License of Ramos*, 155 Ill. App. 3d 374, 376-77, 508 N.E.2d 484, 486 (1987).

¶ 20      In *Ramos*, 155 Ill. App. 3d at 375, 508 N.E.2d at 485, the trooper observed the defendant for 20 minutes before having to spend 6 minutes "resetting the machine to accept a breath sample." During that time, his attention was primarily on the machine and not the defendant, although he was within the trooper's peripheral vision. *Ramos*, 155 Ill. App. 3d at 375, 508 N.E.2d at 485. While the trooper did not stare at the defendant while resetting the machine, he did have occasion to see the defendant during that time as he was seated five to seven feet away and did not leave the room. *Ramos*, 155 Ill. App. 3d at 375, 508 N.E.2d at 485.

¶ 21    This court found no substantial error that would require the results to be stricken. *Ramos*, 155 Ill. App. 3d at 376, 508 N.E.2d at 486. The court stated the six minutes the trooper spent resetting the machine rather than staring at the defendant did "not indicate a serious failure to comply with the required standards and procedures." *Ramos*, 155 Ill. App. 3d at 376, 508 N.E.2d at 486. In finding substantial compliance, the court also noted the defendant had been "observed periodically as the trooper moved about the machine and was constantly within the peripheral vision of the trooper." *Ramos*, 155 Ill. App. 3d at 376-77, 508 N.E.2d at 486.

¶ 22    In *Bergman*, 253 Ill. App. 3d at 370-71, 623 N.E.2d at 1053, the trooper left the room during the 20-minute observation period, "for no more than one minute," to pick up paperwork. The trooper "admitted that during the 20-minute period he did do some paperwork and moved around the room, but [the defendant] remained in his line of sight at all times." *Bergman*, 253 Ill. App. 3d at 371, 623 N.E.2d at 1054.

¶ 23    The defendant's wife testified she spoke with the trooper in the waiting room and he could not see the defendant from where he was standing. *Bergman*, 253 Ill. App. 3d at 371, 623 N.E.2d at 1054. The defendant testified the trooper left the room for a minute or two to retrieve paperwork and for a couple of minutes to talk to the defendant's wife. *Bergman*, 253 Ill. App. 3d at 371, 623 N.E.2d at 1054. The defendant also testified he put some Certs breath mints in his mouth prior to taking the breath test. *Bergman*, 253 Ill. App. 3d at 371, 623 N.E.2d at 1054.

¶ 24    After noting the credibility of the witnesses was at issue, the trial court found the trooper maintained the 20-minute observation period by keeping the defendant within his peripheral vision and hearing. *Bergman*, 253 Ill. App. 3d at 373, 623 N.E.2d at 1055. The Fifth District agreed, finding the trooper "substantially complied with the observation rule by keeping [the defendant] in his line of sight and peripheral vision continuously for 20 minutes, and this is at least sufficient to prove that [the defendant] did not regurgitate, vomit, smoke, or drink anything and did not ingest anything other than the Certs breath mints during the 20-minute observation period." *Bergman*, 253 Ill. App. 3d at 374-75, 623 N.E.2d at 1056.

¶ 25    In *Ebert*, 401 Ill. App. 3d at 960, 931 N.E.2d at 280, the defendant sought to exclude the breath-test results because the officer failed to accompany him to the restroom during the 20-minute observation period. The defendant testified he did not vomit, belch, regurgitate, or place a foreign substance in his mouth. *Ebert*, 401 Ill. App. 3d at 960, 931 N.E.2d at 280. The State argued defendant's testimony showed the test results were reliable. *Ebert*, 401 Ill. App. 3d at 961, 931 N.E.2d at 281.

¶ 26    The Second District found any failure to strictly comply with the 20-minute observation requirement was *de minimis*. *Ebert*, 401 Ill. App. 3d at 965, 931 N.E.2d at 284.

    "The act of observing a motorist for 20 minutes obviously has no direct effect on the result of a breath test administered at the end of that period. The purpose of the observation requirement is to document that the motorist does nothing that might impair the accuracy of the breath test. Although [the officer] might not have been watching defendant while defendant was using the bathroom, defendant's own testimony establishes that he did nothing to impair the accuracy of the test–he did not vomit, belch, regurgitate, or place a foreign substance in his mouth. Thus, the breath test result was no less reliable than it would have been if [the officer] had observed defendant not doing those things. Given defendant's testimony, rigid enforcement of the observation requirement would serve no purpose and would frustrate the

- 5 -

truth-seeking function by excluding reliable evidence." *Ebert*, 401 Ill. App. 3d at 965, 931 N.E.2d at 284.

¶ 27 In ruling on the petition to rescind, Judge Fellheimer found Corporal Baird did not substantially comply with the 20-minute requirement, stating that to find an adequate foundation in this instance would extend the "line of sight cases" to "a new arena that would simply say that the officer didn't hear the person do anything." Judge Bauknecht adopted Judge Fellheimer's reasoning in ruling on the motion *in limine*.

¶ 28 The evidence in this case indicates Baird did not always have defendant in his "line of sight" or "peripheral vision," as he had his back to him at times. Thus, the question becomes whether the requirement that the officer "continuously observe the subject" requires continuous *visual* observation. The State argues an officer may "observe" a subject by using all of his senses, not just his sense of sight. Based on the facts presented and the case law, we find this is a matter of first impression here in Illinois.

> "Administrative regulations have the force and effect of law and are construed according to the same standards that govern the construction of statutes. [Citation.] The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. [Citation.] The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *People v. Bonutti*, 212 Ill. 2d 182, 188, 817 N.E.2d 489, 493 (2004).

¶ 29 Because section 1286.310(a) does not specifically define "observe" or "observation," the words must be given their plain and ordinary meaning. "Observation" has been defined as "the act of noticing or perceiving" and "the act of regarding attentively or watching." The American College Dictionary 836 (1966). "Observe" means "to see or sense esp. through directed, careful, analytic attention." Webster's Third New International Dictionary 1558 (2002); see also The American Heritage Dictionary of the English Language, http://www.yourdictionary.com/observe#americanheritage (last visited Dec. 3, 2014) (noting "observe" means "[t]o be or become aware of, especially through careful and directed attention; notice").

¶ 30 By using the word "observe," and not "keep in line of sight" or "watch," the Department of State Police required the officer to use all of his senses and not merely his sense of sight. The same can be said about the use of the word "observation," given the lack of a requirement that it be a "visual" observation period. Our supreme court has stated "the purpose of section 1286.310(a) is to ensure that only accurate breath-alcohol tests are admitted into evidence against a criminal defendant." *Bonutti*, 212 Ill. 2d at 190, 817 N.E.2d at 494. The purpose of observing the defendant is to ensure that he does not do anything to compromise the breath test by ingesting alcohol or foreign substances or by vomiting. These activities do not require continuous visual observation to determine if they have occurred.

¶ 31 Case law from other states supports the conclusion that observation in similar circumstances can include more than just the sense of sight. See *State v. Mashek*, 312 P.3d 774, 781 (Wash. Ct. App. 2013) ("an individual can 'observe' by seeing *or* other sensing" (emphasis in original)); *Bennett v. State of Idaho, Department of Transportation*, 206 P.3d 505, 508 (Idaho Ct. App. 2009) (stating " 'observation' can include not only visual observation but use of other senses as well"); *State v. Filson*, 976 A.2d 460, 467 (N.J. Super. Ct. Law Div.

2009) (stating "a person may observe a subject by listening, smelling, or feeling, instead of seeing").

¶ 32 Moreover, courts have not required unbroken eye contact by the officer of the defendant. See *State v. Scheffert*, 778 N.W.2d 733, 741 (Neb. 2010) (stating the act of observing "does not require a police officer to stare fixedly at the person being tested"); *Peterson v. Wyoming Department of Transportation, Drivers' License Division*, 2007 WY 90, ¶ 15, 158 P.3d 706 (Wyo. 2007) (stating "[c]ompliance with observation rules does not require an officer to fix his stare on the subject"); *Manriquez v. Gourley*, 130 Cal. Rptr. 2d 209, 216 (Cal. Ct. App. 2003) (stating "uninterrupted eye contact is not necessary (and may not always be sufficient by itself) to determine whether the proscribed events have occurred"); *Goode v. State*, 798 S.W.2d 430, 433 (Ark. 1990) (stating an "officer is not required to stare fixedly at the arrested person for the entire time in order to comply with the 20-minute regulation"); *State v. Smith*, 547 A.2d 69, 73 (Conn. App. Ct. 1988) (stating the "continuous observation" requirement did not "require that an officer fix his unswerving gaze upon a subject during each fifteen minute interval prior to administration of a breath test"); *People v. McDonough*, 518 N.Y.S.2d 524, 526 (N.Y. App. Div. 1987) (stating "[a] constant vigil is not required"); *Glasmann v. State of Colorado, Department of Revenue, Motor Vehicle Division*, 719 P.2d 1096, 1097 (Colo. App. 1986) (stating the officer need not "stare fixedly at a test subject for twenty minutes").

¶ 33 Interpreting the phrase "continuously observe" "to require exclusively unbroken visual observation is contrary to its ordinary meaning." *Mashek*, 312 P.3d at 781. Moreover, "[s]uch an interpretation would not only be practically impossible to perform but would allow a subject to thwart compliance with the regulation simply by turning his head away." *Smith*, 547 A.2d at 73.

¶ 34 While an officer can use more than just his sense of sight when observing a defendant, he must still be in close enough proximity to use his other senses to detect whether the defendant has ingested a foreign substance or vomited.

> "An officer's observation should be of the sort capable of detecting contamination if it actually occurred. Thus, an officer who looks away must be close enough to detect contamination through aural or olfactory senses." *Filson*, 976 A.2d at 469.

See also *Scheffert*, 778 N.W.2d at 741 (stating an officer must "be in a position to detect, through the use of one or more senses, any conduct or event which could contaminate the breath sample and taint the results"); *Bennett*, 206 P.3d at 508 (stating "[s]o long as the officer is continually in position to use his senses, not just sight, to determine that the defendant did not belch, burp or vomit during the observation period, the observation complies with the training manual instructions"); *Manriquez*, 130 Cal. Rptr. 2d at 216 (stating uninterrupted eye contact is not necessary, "so long as the officer remains present with the subject and able by the use of all his or her senses to make that determination").

¶ 35 Here, Corporal Baird searched defendant prior to bringing him to the jail and found nothing of interest, like a bottle of alcohol or mouthwash, on his person. Baird and defendant were alone in the room during the observation period. Baird told defendant that he could not do anything that might bring alcohol to his mouth, such as by belching or vomiting. Baird then proceeded to fill out paperwork. With defendant seated behind him, Baird turned around "every once in awhile" or "every few minutes" to check on him. Baird did not hear any unusual noises coming from behind him and did not see any evidence of vomiting or regurgitation.

After using approximately 10 minutes to complete paperwork, Baird spent the rest of the observation period conversing with defendant.

¶ 36    The evidence in this case indicates Corporal Baird substantially complied with the 20-minute observation requirement. Baird was alone in the same room with defendant, periodically turned around to check on him, and did not hear any sounds that might indicate defendant had vomited, belched, regurgitated, or placed a foreign substance in his mouth. No evidence indicates defendant did so. The fact that Baird had his back to defendant while maintaining observation through the full use of his senses did not make the breath test unreliable. Moreover, as in *Ebert*, any failure to strictly comply with the observation requirement was *de minimis*. Accordingly, we find the trial court erred in granting defendant's motion *in limine*.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 39    Reversed; cause remanded for further proceedings.