THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MATTHEW F. EBERT, Defendant-Appellee.

Second District   No. 2—08—0098

Opinion filed June 1, 2010.

John A. Barsanti, State's Attorney, of St. Charles (Stephen E. Norris and Jennifer Camden, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Randy K. Johnson and Edward D. Siebert, both of Ariano Hardy Nyuli Johnson Richmond & Goettel, PC, of South Elgin, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

The State appeals from an order granting a motion *in limine* by defendant, Matthew F. Ebert, to bar the State from introducing the results of a Breathalyzer test in defendant's prosecution for driving under the influence of alcohol (DUI) (625 ILCS 5/11—501 (West 2006)). We reverse and remand.

At the hearing on the motion *in limine*, defendant testified that he was arrested for DUI on September 3, 2006, and was taken to the Hampshire police department, where he was placed in a holding cell that consisted of a "fenced-in cage." A police officer sat at a desk outside the holding cell. After about 30 minutes, the officer administered a Breathalyzer test. The officer told defendant that he had (in defendant's words) "alcohol breath or alcohol mouth or something like that" and would have to take the test again. During the intervening period between the first and second Breathalyzer tests, defendant was allowed to use the restroom to urinate. The officer did not accompany defendant into the restroom.

Hampshire police officer Todd Boles testified that he attempted to administer a breath test to defendant at 10:28 p.m. The testing apparatus indicated the presence of "mouth alcohol." Mouth alcohol can be present when the test subject vomits, regurgitates, places a foreign substance in his or her mouth, or belches. A mouth alcohol reading can also occur when the test subject has an exceptionally high blood alcohol level. According to Boles, when the apparatus detects mouth alcohol, it discontinues the test. The procedure at that point is to have the test subject rinse his or her mouth with water, observe the subject for 20 minutes, and perform the test again. Boles asked another officer to take defendant to a sink to rinse his mouth out. Boles did not personally observe defendant rinse his mouth. Boles administered a second Breathalyzer test at 10:51 p.m. During the intervening period, he observed defendant and did not see defendant put anything in his mouth, regurgitate, or vomit. It was possible that defendant belched. Boles did not recall whether defendant used the restroom during the 20-minute observation period. Boles testified that when a male test subject uses the restroom during the observation period, the door is usually left open so that it is possible to keep an eye on the subject.

Defendant testified in rebuttal that at no time was he taken to a sink to rinse out his mouth. On cross-examination, he testified that he did not vomit, belch, regurgitate, or place a foreign substance in his mouth.

A party may file a motion *in limine* to obtain an order before trial excluding inadmissible evidence. *People v. Smith*, 248 Ill. App. 3d 351, 357 (1993). When a motorist files a motion *in limine* to bar breath test results, the State must establish a sufficient foundation for admission of the evidence. See *People v. Kilpatrick*, 216 Ill. App. 3d 875, 880-81 (1991). While the decision to grant or deny a motion *in limine* is normally left to the discretion of the trial court (*People v. Jenkins*, 383 Ill. App. 3d 978, 988-89 (2008)), the question presented here is whether the State laid a legally sufficient foundation for its Breathalyzer

evidence by substantially, but not strictly, complying with applicable regulations governing Breathalyzer evidence. That is a question of law, which we will review *de novo*. See *People v. Moore*, 207 Ill. 2d 68, 75 (2003).

■ Section 11—501.2(a) of the Illinois Vehicle Code provides that, in the trial of a criminal or civil action arising out of an arrest for DUI, "evidence of the concentration of alcohol *** in [the] person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible." 625 ILCS 5/11—501.2(a) (West 2006). Pursuant to section 11—501.2(a)(1) of the Illinois Vehicle Code, "[c]hemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of State Police." 625 ILCS 5/11—501.2(a)(1) (West 2006). Those standards provide that, prior to a breath test, the person administering the test "shall continuously observe the subject for at least 20 minutes." 20 Ill. Adm. Code §1286.310(a), amended at 28 Ill. Reg. 10017, 10038, eff. June 30, 2004. During the observation period, "the subject shall be deprived of alcohol and foreign substances and shall not have vomited." 20 Ill. Adm. Code §1286.310(a)(1), amended at 28 Ill. Reg. 10038, eff. June 30, 2004. The standards further provide, "If the subject vomits during the observation (deprivation) period, the process shall be started over by having the individual rinse the oral cavity with water." 20 Ill. Adm. Code §1286.310(a)(2), amended at 28 Ill. Reg. 10038, eff. June 30, 2004. Here, the trial court credited defendant's testimony that he used the restroom during the observation period. The trial court concluded that Boles's testimony that male test subjects are usually kept under observation while in the restroom was not sufficient evidence of compliance with the observation requirement.

Notwithstanding the possibility that Boles was not watching defendant while defendant was using the restroom, the State argues that Boles substantially complied with the requirement that defendant be continuously observed for at least 20 minutes. According to the State, because defendant testified that he did not vomit, belch, regurgitate, or place a foreign substance in his mouth, the test results were reliable and should not be barred.

Although defendant does not dispute that, in some contexts, courts have considered whether an officer substantially complied with the standards promulgated by the Department of State Police (Department), defendant insists that substantial compliance is not sufficient to establish a foundation for admitting Breathalyzer results into

evidence. According to defendant, the flaw in the State's argument is that it recasts defendant's motion *in limine* as a motion to suppress under section 114—12 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114—12 (West 2006)). Defendant points out that a motion to suppress challenges the legality of the means by which evidence was obtained, whereas a motion *in limine* relates to admissibility under the rules of evidence. According to defendant:

> "The State's attempt to mash the two types of motion together is very much manifested in the State's argument that the doctrine of 'substantial compliance' applies to this case. 'Substantial compliance' refers to how closely the police follow the statutes and regulations which govern the taking of breath tests to ensure a reliable result. [Citation.] In other words, it is the measure of whether the seizure of blood or breath was done legally."

Defendant's premise is, in essence, that "substantial compliance" is the test for determining whether "the seizure of blood or breath" is lawful for purposes of a motion to suppress, but is not sufficient to establish an evidentiary foundation for the results of a blood or breath test. The argument is meritless. Our supreme court long ago rejected the idea that a motion to suppress could be grounded in flaws in the manner in which a Breathalyzer test is conducted. In *People v. Van De Rostyne*, 63 Ill. 2d 364 (1976), *overruled in part on other grounds by People v. Young*, 82 Ill. 2d 234 (1980), the trial court granted the defendant's "Motion to Suppress" the results of a Breathalyzer test on the basis that improper procedures had been used in administering the test. *Van De Rostyne*, 63 Ill. 2d at 366. The defendant made the motion after the jury had been impaneled. The State argued, *inter alia*, that its appeal from the order was proper under section 114—12(c) of the Code, which provides, in pertinent part, that, when the trial court grants a motion to suppress during trial, the trial court "shall terminate the trial *** without further proceedings, *unless the State files a written notice that there will be no interlocutory appeal from such order of suppression*." (Emphasis added.) 725 ILCS 5/114—12(c) (West 2008). Rejecting the argument, the *Van De Rostyne* court stated:

> "We need not now engage the questions that may arise as to the authority of the General Assembly to provide for interlocutory appeals from evidentiary rulings made during the course of a trial. [Citation.] *It is sufficient to observe that in the present case there was no search and seizure within the meaning of section 114—12*, and the procedure described in paragraph (c) of that section can not in any event govern this case." (Emphasis added.) *Van De Rostyne*, 63 Ill. 2d at 370.

■ In *Young*, our supreme court held that the State's right to appeal from pretrial orders suppressing evidence is not strictly limited to situations involving alleged involuntary confessions or unlawful searches or seizures. However, *Young* did not disturb *Van De Rostyne*'s holding that an improperly administered Breathalyzer test is *not* an unlawful search or seizure. Therefore, a court hearing a motion to suppress would have no occasion to consider whether there was substantial compliance; that question has no bearing on the issue in a suppression hearing—whether a search or seizure was lawful.

In *In re Summary Suspension of Driver's License of Ramos*, 155 Ill. App. 3d 374 (1987), it was held that the results of a Breathalyzer test were admissible into evidence in a hearing on a petition to rescind the statutory summary suspension of a motorist's driving privileges, where the officer conducting the test had substantially complied with the applicable administrative standards. There, after observing the defendant for 20 minutes, the officer experienced difficulties with the testing apparatus, and for 6 minutes his attention was focused primarily on rectifying the problem. However, the defendant was within the officer's peripheral vision during this period and the officer observed nothing that would compromise the test. The *Ramos* court acknowledged that compliance with the Department's standards is mandatory, but held that there was "no substantial error such that the test results should be stricken." *Ramos*, 155 Ill. App. 3d at 376. The court explained that "[t]he six minutes where the trooper was concentrating on resetting the machine rather than simply standing and staring at the defendant do not indicate a serious failure to comply with the required standards and procedures." *Ramos*, 155 Ill. App. 3d at 376.

Thus, we agree with the State that in order to lay a proper foundation for the admission of the results of a Breathalyzer test, it is necessary to establish only that the test was performed in substantial compliance with the Department's standards. As noted, *Ramos* held that there was substantial compliance where the defendant was at least within the officer's peripheral vision at all times. That might not have been the case here, so *Ramos* is not precisely on point. It is therefore necessary to consider, in more general terms, what must be shown to establish substantial compliance with the Department's standards. *People v. Bishop*, 354 Ill. App. 3d 549 (2004), although factually quite different from the present case, is instructive nonetheless. In *Bishop*, the defendant was examined in a hospital emergency room after an automobile accident. In connection with the examination, medical personnel obtained a urine sample from the defendant's catheter bag. Later, with the assistance of a patient care technician, a

police officer obtained a separate sample of the defendant's urine from the catheter bag. The defendant argued that the results of testing on the second sample were inadmissible because the Department's standards at that time provided that testing must be performed on a urine sample "collected from the subject's first emptying of the bladder" (20 Ill. Adm. Code §1286.330(d) (Conway Greene CD-ROM April 2001)). *Bishop*, 354 Ill. App. 3d at 555. The court rejected the argument for several reasons. Of particular relevance here, the court considered the "helpful discussion concerning the question of substantial compliance" (*Bishop*, 354 Ill. App. 3d at 555) in the Ohio Supreme Court's decision in *State v. Burnside*, 100 Ohio St. 3d 152, 2003—Ohio—5372, 797 N.E.2d 71.

The *Burnside* court ultimately settled upon a substantial compliance standard excusing only those errors in the testing procedure that are "clearly de minimis." *Burnside*, 100 Ohio St. 3d 152, 2003—Ohio—5372, 797 N.E.2d 71, at ¶34. Prior to announcing that standard, however, the *Burnside* court noted that the Court of Appeals of Ohio had developed two approaches for determining whether testing was in substantial compliance with procedures formulated by the Ohio Department of Health. Under one approach, "a court will conclude that the state has substantially complied with the Department of Health regulations if the alleged deviation did not affect the reliability of the test results." *Burnside*, 100 Ohio St. 3d 152, 2003—Ohio—5372, 797 N.E.2d 71, at ¶28. Under the second approach, "a court will conclude that the state has substantially complied with the Department of Health regulations so long as the alleged deviation did not cause an erroneously higher test result." *Burnside*, 100 Ohio St. 3d 152, 2003—Ohio—5372, 797 N.E.2d 71, at ¶28. The *Burnside* court observed that "[t]he import in denominating between these two approaches lies not in understanding the difference between them, but rather in recognizing the similarity: both require a judicial determination of what effect, if any, noncompliance had on the alcohol-test results." *Burnside*, 100 Ohio St. 3d 152, 2003—Ohio—5372, 797 N.E.2d 71, at ¶29. The *Burnside* court found both approaches problematic in cases where the effect of noncompliance involves scientific principles beyond the ken of the trial court. In this vein, the court noted that "the General Assembly instructed the Director of Health—and *not* the judiciary—to ensure the reliability of alcohol-test results by promulgating regulations precisely because the former possesses the scientific expertise that the latter does not." (Emphasis in original.) *Burnside*, 100 Ohio St. 3d 152, 2003—Ohio—5372, 797 N.E.2d at 71, at ¶32.

■ Similarly, our General Assembly has delegated to the Department the responsibility for formulating standards for blood, breath, and urine testing. The standards exist, not for their own sakes, but in service of the truth-seeking function, which they promote by ensuring that blood, breath, and urine tests are conducted in a manner that produces reliable results. If the standards are to serve this purpose, the rule of substantial compliance must be one that neither blithely ignores the standards nor enforces them in a purely rote manner. We are therefore reluctant to relax the standards when doing so would require inquiry into the scientific basis for a particular standard. However, when it is clear that a particular deviation from the mandated procedures does not pertain to a matter of science, a court is perfectly competent to determine whether, in a given case, the deviation compromised the integrity of the testing process. This case is a perfect illustration. The act of observing a motorist for 20 minutes obviously has no direct effect on the result of a breath test administered at the end of that period. The purpose of the observation requirement is to document that the motorist does nothing that might impair the accuracy of the breath test. Although Boles might not have been watching defendant while defendant was using the bathroom, defendant's own testimony establishes that he did nothing to impair the accuracy of the test—he did not vomit, belch, regurgitate, or place a foreign substance in his mouth. Thus, the breath test result was no less reliable than it would have been if Boles had observed defendant not doing those things. Given defendant's testimony, rigid enforcement of the observation requirement would serve no purpose and would frustrate the truth-seeking function by excluding reliable evidence. Under these circumstances, it may fairly be said that any failure to strictly comply with the observation requirement was *de minimis*.

■ Defendant alternatively argues that the Breathalyzer result was properly barred because he did not rinse his mouth after the first Breathalyzer test indicated the presence of mouth alcohol. The argument is without merit. The Department's standards require a test subject to rinse his or her mouth with water only after vomiting. According to Boles's testimony, a reading of mouth alcohol can be the result of vomiting, but can also be the result of regurgitating, belching, or an exceptionally high blood alcohol level. Therefore, the first Breathalyzer result does not establish that defendant vomited and it was not necessary to have him rinse his mouth with water.

Because the State established substantial compliance with the Department's standards, it established a sufficient foundation for admission of the Breathalyzer result. Accordingly, the trial court erred in granting defendant's motion *in limine*.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the case is remanded for further proceedings.

Reversed and remanded.

JORGENSEN and BURKE, JJ., concur.