# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Hall*, 2011 IL App (2d) 100262

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID M. HALL, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-10-0262 |
| Filed | December 9, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a DUI prosecution, the trial court's order barring the use of blood alcohol test results on the ground that defendant's blood had not been collected and stored in compliance with the applicable regulations, including the requirement that the tubes used contain anticoagulant and preservative, was affirmed, but the dismissal of one count of DUI on speedy trial and compulsory joinder grounds was reversed where there was no indication defendant ever made an affirmative request for a speedy trial. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, Nos. 08-CM-2497, 08-TR-56871, 08-TR-56872, 08-DT-1274, 08-TR-449354; the Hon. F. Keith Brown, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, Michael M. Glick, and Retha R. Stotts, Assistant Attorneys General, of counsel), for the People. |
| | |
| | Douglas E. Zeit and Brian E. King, both of Law Offices of Douglas E. Zeit, of Waukegan, for appellee. |
| | |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Bowman and Birkett concurred in the judgment and opinion. |

## OPINION

¶ 1   The State appeals from the trial court's orders barring the use of the blood alcohol test results of defendant, David M. Hall, and dismissing one count of driving under the influence (DUI) (625 ILCS 5/11-501(a)(1) (West 2006)). We affirm in part, reverse in part, and remand.

¶ 2                                 I. BACKGROUND

¶ 3   Defendant was arrested on April 26, 2008, and charged with DUI (influence of alcohol) (625 ILCS 5/11-501(a)(2) (West 2006)), improper turn (625 ILCS 5/11-801(a)(1) (West 2006)), improper lane usage (625 ILCS 5/11-709(a) (West 2006)), and resisting a peace officer (720 ILCS 5/31-1 (West 2006)). During the course of the arrest, the arresting officer, Officer Goldsmith of the Vernon Hills police department, sprayed defendant with pepper spray and pulled defendant from his vehicle. A rescue squad was called to the scene, and emergency medical technicians tended to defendant for about 25 minutes. Defendant was then taken to Condell Medical Center for treatment of his left eye, which had taken the brunt of the pepper spray. While at the hospital, defendant was hooked up to an electrocardiogram, which detected a rapid heart rate. Before defendant was moved from the emergency room and admitted to the hospital, Goldsmith told him to come to the police station to pick up his citations after he was released. Goldsmith then left, and defendant was moved to a hospital room, where, eventually, several vials of his blood were drawn to be tested for heart-related issues. The following afternoon, defendant was released from the hospital and he picked up his citations at the police station.

¶ 4   The Illinois Attorney General took over the prosecution of this case, as the Lake County State's Attorney determined that his office had a conflict of interest.[1] An assistant Attorney

---

[1]Defendant is a Lake County circuit court judge.

General, with the help of an assistant State's Attorney, learned that several vials of defendant's blood still remained at Condell. On May 14, 2008, the trial court ordered Condell to release the blood samples to the Vernon Hills police department for transportation to the Illinois State Police (ISP) crime lab for testing.[2] An ISP technician tested the blood for alcohol concentration on May 15 and reported a blood alcohol concentration (BAC) of 0.107. This information was tendered to defendant on June 11, but the test results remained sealed under court order.

¶ 5     In April 2009, defendant filed a series of three motions to bar the use of the BAC test results and defendant's medical records that the State had obtained. After hearing argument on September 28, 2009, the trial court denied defendant's motion to bar the use of the medical records. The court also denied the motion to bar the use of the BAC test results, in order to grant the State "an opportunity to bring in their witnesses and show a complete factual foundation." Defendant would be given the opportunity to renew his motion at the end of the State's offer of proof.

¶ 6     On that same day, the State filed an information charging defendant with DUI (BAC of 0.08 or more) (625 ILCS 5/11-501(a)(1) (West 2006)). Defendant then filed a motion to dismiss that charge on compulsory joinder and speedy trial grounds, pursuant to section 103-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2006)).

¶ 7     The trial court held an evidentiary hearing on defendant's motion to bar the use of the BAC test results on March 1, 2010. The State called a series of witnesses from Condell Medical Center, the Vernon Hills police department, and the ISP crime lab to testify regarding the drawing, handling, storage, transportation, and testing of defendant's blood. Defendant called one witness, a pharmacist who testified about the possibility of "false positive" results in blood alcohol tests, especially where no preservative was added to the blood sample. Following the hearing, the trial court granted defendant's motion to bar the use of BAC evidence, finding that the blood had not been collected and stored in compliance with applicable regulations contained in the Illinois Administrative Code. 20 Ill. Adm. Code 1286.320 (2011). The court listed all four original case numbers in the caption of its written order and entered separate minute orders in the resisting arrest and traffic cases, stating that "blood results *** shall not be admissible in this matter." After denying the State's subsequent motion for reconsideration, the court granted defendant's motion to dismiss the charge of DUI (BAC of 0.08 or more) on compulsory joinder and speedy trial grounds. The State filed a certificate of impairment, and this appeal followed.

---

[2]Neither the State nor defendant raised the issue of the timeliness of the procurement of the blood samples for testing. The apparent delay was due in part to the fact that Goldsmith neither requested that a sample be taken nor was he present when the sample that was ultimately tested was taken. The State first sought a court order to preserve the blood samples and to release them for testing on May 2. However, all Lake County judges recused themselves from the case, and the supreme court assigned Judge Brown to the case on May 5.

¶ 8                                    II. ANALYSIS

¶ 9        We first note that we have taken with the case defendant's motion to strike portions of the State's reply brief. Defendant alleges that the State makes several arguments that are waived, frivolous, not supported by the record, and/or not supported by legal authority. We deny the motion to strike, but we will disregard any arguments contained in that brief that are inappropriately made.

¶ 10       The State first contends that the trial court erred in excluding the BAC evidence. In general, this court will review a trial court's ruling on a motion *in limine* for an abuse of discretion. *People v. Morris*, 394 Ill App. 3d 678, 680 (2009). However, where the issue on appeal is a question of law, we will grant a *de novo* review. *Morris*, 394 Ill. App. 3d at 680. The interpretation of an administrative regulation or rule is a question of law to which the principles of statutory interpretation apply. *Morris*, 394 Ill. App. 3d at 680.

¶ 11       Section 11-501.2 of the Illinois Vehicle Code (625 ILCS 5/11-501.2 (West 2006)) governs the admissibility of BAC test results in DUI prosecutions. *Morris*, 394 Ill. App. 3d at 681.[3] To be considered valid under the provisions of that section, a blood analysis "shall have been performed according to standards promulgated by the Department of State Police." 625 ILCS 5/11-501.2(a)(1) (West 2006). Pursuant to the relevant portions of section 1286.320 of title 20 of the Administrative Code:

> "The following procedures shall be used to obtain a blood sample from a subject to determine the alcohol concentration, or presence of other drugs or intoxicating compounds:
>
>> (a) The blood sample shall be collected in the presence of the arresting officer, *** or an agency employee who can authenticate the sample.
>>
>> * * *
>>
>> (d) Officers shall use DUI kits provided by the Department, if possible. If kits
>>
>> are not available, officers may submit two standard grey top vacuum tubes. (Pursuant to generally accepted industry standards, grey top vacuum tubes contain an anticoagulant and preservative.)" 20 Ill. Adm. Code 1286.320 (2011).

Failure to comply with section 11-501.2 and the regulations promulgated thereunder renders the results of chemical tests inadmissible in a DUI prosecution. *Morris*, 394 Ill. App. 3d at 681.

¶ 12       The testimony presented at the evidentiary hearing revealed no evidence that either the arresting officer or any other agency employee was present when defendant's blood was drawn. Juliana Gonzales, the Condell nurse who drew defendant's blood pursuant to the order of Dr. Murray Keene, testified that she drew the blood into several containers, one of which had a purple top. Joan DuVall, the laboratory manager at Condell, testified that,

---

[3]See also Ill. Evid. R. 101 (eff. Jan. 1, 2011) ("A statutory rule of evidence is effective unless in conflict with a rule or a decision of the Illinois Supreme Court."). To our knowledge, there is no supreme court rule or decision that is in conflict with the declaration on admissibility contained in section 11-501.2.

according to standard industry-wide color codes, a purple top on a sample tube signifies that the tube contains an anticoagulant. Jennifer Poltorak, a toxicologist at the ISP crime lab with bachelor's degrees in chemistry and forensic science, testified that she received three tubes of defendant's blood for testing, including one tube with a purple stopper. She tested two samples from the purple-topped tube, using a head space gas chromatograph; the average result revealed "an ethanol level of 0.107 grams per deciliter." Poltorak testified that the ethanol reading would not have been affected by the presence of methanol in the blood sample. She also testified that it was not unusual to perform a BAC test on a blood sample that was 18 or 19 days old. Defendant's only witness, James O'Donnell, was a pharmacist and professor with bachelor's and doctorate degrees in pharmacy and a master's degree in nutrition. Testifying as an expert in pharmacology, O'Donnell opined that the tubes of defendant's blood were tainted because of a lack of determination of proper storage and the "significant probability" that microbial growth in blood untreated with preservative would lead to the synthesis of alcohol in the samples and would cause a "false positive" reading. Preservatives do not completely kill such bacteria but limit their growth.

¶ 13      Section 11-501.2 was intended to ensure the reliability of evidence introduced in DUI prosecutions. *People v. Emrich*, 113 Ill. 2d 343, 349 (1986). A "valid" blood analysis under this section "shall have been performed according to standards promulgated by the Department of State Police." 625 ILCS 5/11-501.2(a)(1) (West 2006). As noted, the failure to comply with section 11-501.2 and the regulations promulgated thereunder renders the results of chemical tests inadmissible in a DUI prosecution. *Emrich*, 113 Ill. 2d at 351. The State admits that it did not fully comply with subsections (a) and (d) of section 1286.320. However, it argues that strict compliance with the provisions of the Administrative Code is not required. Relying on this court's opinion in *People v. Ebert*, 401 Ill. App. 3d 958 (2010), the State argues that the BAC test results should be admitted as long as the testing procedures substantially complied with the regulations.

¶ 14      We first address the State's noncompliance with subsection (d), which commands that the tubes used to contain the blood for testing "contain an anticoagulant and preservative." 20 Ill. Adm. Code 1286.320(d). Here, while there was evidence that the purple-topped tube from which the blood was taken for the BAC test contained an anticoagulant, there is no evidence that the tube contained the required preservative. There was 50% compliance with the requirement that the tube contain both an anticoagulant and preservative; however, there was zero compliance with the requirement that the tube contain a preservative. This is a failure to comply, not "substantial" compliance.

¶ 15      The State's reliance on *Ebert* is overblown in this instance. In *Ebert*, which involved the issue of whether a police officer failed to comply with regulations requiring him to continuously observe the defendant for at least 20 minutes before administering a breath test, this court stated:

"The standards exist, not for their own sakes, but in service of the truth-seeking function, which they promote by ensuring that blood, breath, and urine tests are conducted in a manner that produces reliable results. If the standards are to serve this purpose, the rule of substantial compliance must be one that neither blithely ignores the standards nor enforces them in a purely rote manner. *We are therefore reluctant to relax the standards*

*when doing so would require inquiry into the scientific basis for a particular standard.* However, when it is clear that a particular deviation from the mandated procedures does not pertain to a matter of science, a court is perfectly competent to determine whether, in a given case, the deviation compromised the integrity of the testing process." (Emphasis added.) *Ebert*, 401 Ill. App. 3d at 965.

This court found that the purpose of the observation period at issue was to "document that the motorist does nothing that might impair the accuracy of the breath test," such as vomit, belch, regurgitate, or place a foreign object in his mouth. *Ebert*, 401 Ill. App. 3d at 965. However, even though the officer did not observe the defendant for the required 20 minutes, the defendant himself testified that he did not perform any of those acts. "Under these circumstances," failure to strictly comply with the regulation "was *de minimis*." *Ebert*, 401 Ill. App. 3d at 965.

¶ 16        Here, however, the issue of whether the failure to include preservative in the tube of blood used for defendant's BAC test requires an inquiry into the scientific basis for the requirement. The blood was not tested for almost three weeks after it was drawn; neither the trial court nor this court is "perfectly competent," in the words of *Ebert*, to determine whether the failure to include the preservative compromised the integrity of the testing process. See *Ebert*, 401 Ill. App. 3d at 965. The legislature has assigned to the Department of State Police the responsibility to promulgate standards for chemical analyses of blood, urine, and breath and to "prescribe regulations as necessary to implement" section 11-501.2. 625 ILCS 5/11-501.2(a)(1) (West 2006). We will not second-guess the reasoning behind these regulations by considering conflicting testimony regarding scientific matters that are within the purview of the Department of State Police. We cannot conclude that failure to strictly comply with subsection (d) is *de minimis*. Under the facts of this case, *Ebert* does not support the State's argument that substantial compliance with the regulation would be sufficient. Instead, the *Ebert* analysis reinforces our conclusion that the trial court did not err in excluding the BAC evidence because the State did not comply with subsection (d).

¶ 17        Because of our disposition of this aspect, we need not address the issue of compliance with the requirement of subsection (a) that the officer or another agency representative be present when the blood is drawn.

¶ 18        The State next contends that the trial court erred in extending its ruling excluding the BAC results to the non-DUI counts. The standards promulgated pursuant to section 11-501.2 are applicable only to the offense of DUI; in a trial for any other offense, BAC test results are to be received in evidence under the usual standards governing the admission of evidence. *People v. Murphy*, 108 Ill. 2d 228, 236 (1985); see also *Emrich*, 113 Ill. 2d at 351 (both involving the offense of reckless homicide). This is true even if the DUI offense is tried with the other offenses. See *Emrich*, 113 Ill. 2d at 351.

¶ 19        We note that, in its motion to reconsider, the State moved the court to clarify its order "and permit evidence of the blood alcohol level on the remaining DUI count alleging impairment." Although the State cited to *Murphy* and *Emrich* in its motion and arguments, it did not address the exclusion of the BAC results *vis-á-vis* the non-DUI counts. A party cannot make an argument for the first time on appeal. *People v. Vasquez*, 388 Ill. App. 3d

532, 543 (2009). An argument not raised in the trial court is forfeited on appeal, and we need not review it. *Vasquez*, 388 Ill. App. 3d at 543. The doctrine of forfeiture applies to the State as well as to the defendant. *People v. McKown*, 236 Ill. 2d 278, 308 (2010) (citing *People v. Williams*, 193 Ill. 2d 306, 347 (2000)). We find this argument forfeited and will not consider it.

¶ 20    The State next contends that the trial court erred in dismissing the charge of DUI (BAC of 0.08 or more) on speedy trial and compulsory joinder grounds. We agree.

> "Compulsory joinder requires the State to bring multiple charges in a single prosecution. The charges are tried together unless the circuit court determines that a separate trial is required in the interest of justice. [Citation.] *Once a speedy-trial demand is filed*, the multiple charges are subject to the same speedy-trial period. If the charges are required to be brought in a single prosecution, *the speedy-trial period begins to run when the speedy-trial demand is filed, even if the State brings some of the charges at a later date*." (Emphases added.) *People v. Quigley*, 183 Ill. 2d 1, 13 (1998).

Even if the charges were subject to compulsory joinder, defendant did not file a speedy trial demand.

¶ 21    Section 103-5(b) requires that an individual on bail or recognizance, such as defendant, be tried within 160 days from the date that he demands trial. 725 ILCS 5/103-5(b) (West 2006); *People v. Murray*, 379 Ill. App. 3d 153, 160 (2008). While there are no magic words required to constitute a speedy trial demand, there must be some affirmative statement requesting a speedy trial. *Murray*, 379 Ill. App. 3d at 160. Here, there is no indication that defendant ever made any such affirmative request for a speedy trial. As no demand was made, no speedy trial period, for either the initial charges or the later-brought BAC charge, could run. Therefore, the trial court erred in granting defendant's motion to dismiss.

¶ 22                                III. CONCLUSION

¶ 23    For these reasons, the judgment of the circuit court of Lake County barring the use of the BAC test results is affirmed; the judgment dismissing the charge of DUI (BAC of 0.08 or more) is reversed; and the cause is remanded.

¶ 24    Affirmed in part and reversed in part; cause remanded.