2019 IL App (2d) 180758
No. 2-18-0758
Opinion filed August 13, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE CITY OF McHENRY, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-DT-331 |
| | ) | |
| STUART A. KLEVEN, | ) | Honorable |
| | ) | Joel D. Berg, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant, Stuart A. Kleven, was charged with one count each of driving with a breath-alcohol concentration of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2016)) and driving under the influence of alcohol (*id.* § 11-501(a)(2)). He moved to suppress the result of the breath test that he took at the police station. The trial court granted his motion. The City of McHenry, which the McHenry County State's Attorney authorized to prosecute the case (see *id.* § 16-102), appeals. We reverse and remand.

¶ 2   Defendant's motion relied on the following Illinois Administrative Code provision:

"(a) Prior to obtaining a breath analysis reading from a subject, the [operator] ***

shall continuously observe the subject for at least 20 minutes.

(1) During the 20 minute observation period the subject shall be deprived of alcohol and foreign substances and shall not have vomited.

(2) If the subject vomits during the observation (deprivation) period, the process shall be started over by having the individual rinse the oral cavity with water.

(3) If the individual continues to vomit, alternative testing shall be considered." 20 Ill. Adm. Code 1286.310(a) (2004).

¶ 3    The motion to suppress alleged as follows. On May 17, 2017, police officers stopped defendant's vehicle and arrested him. In the police station's booking room, an officer tested his breath-alcohol concentration. However, during the 20-minute observation period, the officer twice left the room. In these absences, defendant could have vomited or placed some substance into his mouth. Because the officer had not conducted the test as required, the result should be suppressed.

¶ 4    In response, plaintiff alleged as follows. Defendant was taken to the booking room by Officer Matthew Schmitt. The room had equipment that recorded both images and sound. According to the video of defendant's detention, he was tested at 12:30:36 a.m. Thus, the mandatory 20-minute observation period began at 12:10:36. During this period, the video depicted Schmitt leaving the room twice, to go to his squad car in the sally port. The first trip lasted from 12:23:48 until 12:26:21. At 12:26:26, Schmitt asked defendant whether he had vomited, burped, or eaten anything in the past half hour; defendant responded, "no." Schmitt's second absence lasted from 12:28:27 though 12:28:50. During this period, defendant sat with his head up in full view of the camera. Plaintiff reasoned that, because the purpose of the rule requiring a 20-minute observation period is to ensure that a person to be tested has not belched,

vomited, smoked, or eaten anything in the period preceding the test, and because the video showed that defendant had done none of these things between 12:10:36 and 12:30:36, Schmitt had substantially complied with the 20-minute rule even though he had not directly observed defendant continuously the whole time.

¶ 5     The trial court held a hearing on defendant's motion.  Defendant introduced the video into evidence, and it was played in court.  (We shall recount the video as necessary when we explain our decision.)  Defendant put on no further evidence.

¶ 6     Plaintiff moved for a directed finding, arguing that defendant had failed to present a *prima facie* case that Schmitt had not substantially complied with the 20-minute rule.  According to plaintiff, the video showed that, during both of Schmitt's absences, defendant had been in full view of the camera and subject to the sound recording and had not belched, vomited, eaten, or done anything else to call the breath-test result into question.  Moreover, upon returning from his first absence, Schmitt had asked defendant whether he had belched, vomited, or eaten in the past half hour, and defendant had said no.  Defendant contended that Schmitt had not observed him continuously for 20 minutes and that the video could not substitute for such observation.

¶ 7     The trial court denied plaintiff's motion.  The court noted that, under *People v. Ebert*, 401 Ill. App. 3d 958, 960 (2010), the 20-minute rule requires only substantial, not strict, compliance.  Nevertheless, the court reasoned, Schmitt's absences, for more than two minutes and then for half a minute, failed even this standard.  If asking a detainee whether he has belched, vomited, or eaten during the 20-minute observation period and receiving the answer "no" could constitute substantial compliance, the requirement of actually observing the detainee would be negated.  Moreover, relying on the self-report of a person who is presumably impaired is inherently dubious.  The court explained, "I honestly *** can't even tell you sitting here—and I'm stone

sober right now for the record—I can't tell you whether I've belched or anything within the last half hour."

¶ 8 The trial court noted next that, although *Ebert* found substantial compliance based on the defendant's testimony that he had not done any disqualifying act during the observation period, he had made this statement in court under oath, while he was presumably sober. Also, *People v. Chiaravalle*, 2014 IL App (4th) 140445, ¶ 9, found substantial compliance even though the officer had his back turned to the defendant " 'for minutes at a time.' " The trial court noted that *Chiaravalle* held that mere hearing is acceptable observation, so that "theoretically, Ray Charles could serve as the observer. How Ray Charles could ever tell us that the person did not put something in their mouth is beyond me." Noting that *Chiaravalle* was binding, the trial court distinguished it; Schmitt could neither see *nor* hear defendant during his absences. In neither *Ebert* nor *Chiaravalle* had the officer left the room altogether; Schmitt had done so twice.

¶ 9 Plaintiff called Schmitt. He testified as follows. The booking room had "a camera on the back wall facing the entire booking room that [was] audio and visually recorded [*sic*]." The recording was sometimes "jumpy with the audio," which did not "exactly match the movement of the video," but nothing suggested that there were any jumps in the video.

¶ 10 Schmitt testified that, in the booking room, he sat on a stool at a desk with a booking computer, and defendant sat on a stool in front of him and to his right. The room was about 10 feet by 15 feet, and the Breathalyzer was located 1 to 2 feet from defendant. Schmitt began the 20-minute observation period. While Schmitt was in the room, he was either working on the computer or at the Breathalyzer. While sitting at the computer desk, Schmitt could see and hear defendant. While working on the Breathalyzer, Schmitt had his back turned to defendant, but he could hear him.

¶ 11 Schmitt testified that, twice during the 20-minute observation period, he exited the room and went to the sally port. Before his first departure, he did not see or hear defendant eat, drink, vomit, or smoke. When Schmitt returned to the booking room, defendant was still sitting on the stool. Schmitt noticed nothing about defendant that indicated that he vomited, ate, or drank during Schmitt's absence. Schmitt asked defendant whether he had vomited, burped, or eaten in the preceding half hour; defendant said no.

¶ 12 Schmitt testified that, between returning the first time and leaving the second time, he observed defendant continuously, although his back was turned a couple of times while he worked on the Breathalyzer. During this period, Schmitt did not see or hear defendant vomit, eat, or drink. On returning the second time, he saw that defendant was still sitting on the stool. Nothing indicated that he vomited, smoked, ate, or drank during Schmitt's absence.

¶ 13 Plaintiff rested. The court granted defendant's motion, explaining as follows. Schmitt had left the booking room twice, once for 2½ minutes and once for half a minute. Although only substantial compliance was required, "leaving the room not once but twice for in total over three minutes is nobody's definition of substantial compliance." The court continued:

> "[T]he problem that we have is we are relying on self-reporting for someone who was never told to pay attention to whether they burped, hiccuped [*sic*], or vomited *** or did anything else, and I'm relying on a video that is not a straight on video of the guy's face. It's a video from the top looking down. You can't even see his mouth the vast majority of the time. [So], I can't even allow the video to substitute for the 20-minute observation period because I can't clearly see what's happening with his mouth while the officer is gone from the room.

[The] 20-minute observation period means an officer, under all of the existing case law, has to at least be in the room for the 20 minutes. That wasn't done here. And so the foundation has not been laid."

¶ 14 In an offer of proof, Schmitt testified that the result of defendant's breath test was 0.168, above the legal limit. After the court granted defendant's motion and barred the introduction of the breath-test result, plaintiff timely appealed.

¶ 15 On appeal, plaintiff contends that the court erred in holding that Schmitt had not substantially complied with the 20-minute-observation rule. Plaintiff acknowledges that the video showed that Schmitt left the booking room twice and thus defendant was out of his sight and hearing for a total of more than 2 of the 20 minutes. Plaintiff argues, however, that case law establishes that Schmitt need not have had defendant under his direct observation for the entire 20-minute period and that the video provided satisfactory evidence that, in Schmitt's absence, defendant did not vomit or eat or drink anything. Plaintiff reasons that, because it demonstrated that the purposes of the 20-minute rule were fulfilled, the breath-test result was not rendered unreliable by any irregularities that the rule was intended to prevent. Therefore, plaintiff concludes, it laid a sufficient foundation for the admission of the result of the breath test.

¶ 16 Defendant has not filed an appellee's brief, but we may decide the merits of this appeal. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 17 Whether plaintiff laid a sufficient foundation for the breath-test result is a question of law, which we review *de novo*. *Ebert*, 401 Ill. App. 3d at 960-61. The regulation at issue here requires substantial, not strict, compliance. *Id.*

¶ 18 We turn to the case law applying the 20-minute rule. In *People v. Bergman*, 253 Ill. App. 3d 369 (1993), the officer twice left the room, for one minute or less each time, and moved

around the room at other times. However, he kept the defendant within his hearing and his line of sight the whole time. The appellate court agreed with the trial court that the officer had substantially complied with the rule. *Id.* at 374. The court noted that in *In re Summary Suspension of Driver's License of Ramos*, 155 Ill. App. 3d 374, 376 (1987), the court held that the officer substantially complied with the rule even though he had spent part of the period working on the breath machine; the officer had kept the defendant within his peripheral vision and had observed him directly from time to time. *Bergman*, 253 Ill. App. 3d at 373-74.

¶ 19    The *Bergman* court explained that "[t]he purpose of the 20-minute observation period is to ensure that the defendant does not regurgitate, vomit, smoke, or ingest anything which will render the breathalyzer test results unreliable." *Id.* at 374. The officer had substantially complied with the rule, because he had kept the defendant under observation sufficiently to know that he had not done any of the problematic acts. *Id.* at 374-75.

¶ 20    In *Ebert*, the officer testified that, after an initial test that was discontinued because the machine detected " 'mouth alcohol,' " the defendant rinsed his mouth and waited to retake the test. *Ebert*, 401 Ill. App. 3d at 960. During the intervening period, the officer observed the defendant. The officer testified that he did not see the defendant put anything into his mouth, regurgitate, or vomit but that it was possible that the defendant belched. He did not recall whether the defendant used the restroom, but he testified that when a defendant did so the door was usually kept open, in order that he could still be observed. The defendant testified that during the observation period he did not put anything into his mouth, regurgitate, vomit, or belch. He also testified that he used the restroom and was not accompanied there. *Id*. The trial court granted the defendant's motion *in limine* to suppress the result of the second breath test. *Id*. at 959-60.

¶ 21   This court reversed and remanded. We explained that the purpose of the 20-minute rule and the other regulations is to ensure that a breath test is conducted "in a manner that produces reliable results." *Id.* at 965. Thus, to ascertain whether there has been substantial compliance with the 20-minute rule, a court must "determine whether *** the deviation compromised the integrity of the testing process." *Id.* We concluded that the answer in that case was no, because, whatever the imperfections in the officer's observation of the defendant, the defendant's own testimony established that he had done nothing to impair the test's accuracy. *Id.* Thus, the evidence at the hearing on the defendant's motion *in limine* established that "the breath test result was no less reliable than it would have been if [the officer] had observed [the] defendant not doing those things." *Id.*

¶ 22   In *Chiaravalle*, the officer testified that he initially instructed the defendant not to do anything that could bring alcohol to his mouth, such as vomiting. The officer was with the defendant for the whole 20-minute observation period but spent much of the time with his back to him. *Chiaravalle*, 2014 IL App (4th) 140445, ¶¶ 7, 28. The trial court granted the defendant's motion *in limine* to exclude the result of the breath test, but the appellate court reversed. *Id.* ¶¶ 1-2.

¶ 23   The court explained that the requirement that the officer " 'continuously observe the subject' " does not imply a requirement of "continuous visual observation," as there are other ways to monitor the defendant to ensure that he does not compromise the test. (Emphasis omitted.) *Id.* ¶¶ 28-30; see 20 Ill. Adm. Code 1286.310(a) (2004). The court cautioned that the officer "must still be in close enough proximity to use his other senses to detect whether the defendant has ingested a foreign substance or vomited." *Chiaravalle*, 2014 IL App (4th) 140445, ¶ 34.

¶ 24 The court noted that, although the defendant was out of the officer's line of sight for much of the time, the officer had told the defendant not to bring alcohol to his mouth, belch, or vomit; he had turned around from time to time to look at the defendant; and he had heard or seen no evidence of vomiting or regurgitation. Moreover, after spending the first 10 minutes of the observation period on his paperwork, the officer conversed with the defendant the rest of the time. *Id.* ¶ 35. Thus, he had substantially complied with the 20-minute rule. *Id.* ¶ 36.

¶ 25 We return to the present case. Schmitt was completely absent from the booking room for more than two minutes. During his absences, he could not see, hear, or otherwise observe defendant. Although the audiovisual equipment recorded defendant during these absences, Schmitt did not view or listen to any of the recording before he tested defendant's breath. Thus, it strains common usage to conclude that, during the 20-minute observation period, Schmitt "continuously observe[d]" defendant. 20 Ill. Adm. Code 1286.310(a) (2004). Although substantial compliance does not require uninterrupted visual observation, we cannot stretch the rule's language to cover the situation here. For more than two minutes, Schmitt failed to observe defendant *at all*—visually, aurally, or otherwise. Schmitt was in the sally port, out of range of defendant. Thus, to paraphrase the trial court, Schmitt did not meet even the "Ray Charles" standard of *Chiaravalle*. Moreover, his complete inability to observe defendant in any way, for a significant period, distinguishes this case from *Bergman* and *Ramos*.

¶ 26 Were we to rely solely on Schmitt's conduct, we could not find that he substantially complied with the 20-minute rule. However, under *Ebert*, a court may still find substantial compliance even if an officer completely failed to observe the defendant for a significant period. This depends on the existence of evidence that compensates for the officer's inability to say whether, in a given period, the defendant did something that the regulation recognizes as inimical

to reliance on the breath-test result. In *Ebert*, such evidence came in the form of the defendant's testimony that, during the 20-minute observation period, he did not put anything into his mouth, regurgitate, vomit, or belch. *Ebert*, 401 Ill. App. 3d at 960. Based on this evidence, we held that the officer's failure to observe the defendant for part of the 20-minute period was not crucial.[1]

¶ 27 Although in *Ebert* we stated that the officer had substantially complied with the rule, it would have been more precise to say that the lack of substantial compliance was harmless, because evidence showed that the officer's failure to keep the defendant under continuous observation did not render the test result unreliable. We did not emphasize the degree of the officer's fidelity to the regulation's requirements, but instead considered whether his deviation affected "the integrity of the testing process." *Id.* at 965. Clearly, we spoke not to compliance but to prejudice. We held that the failure to adhere to the regulation did not affect the integrity of

---

[1] We did not explicitly state that the officer had failed for part of the 20-minute period to observe the defendant. However, in granting the defendant's motion, the trial court credited the defendant's testimony that he used the restroom unaccompanied for part of the period, and it held that the officer's testimony about the customary practice when male defendants use the restroom "was not sufficient evidence of compliance with the observation requirement." *Id.* at 961. Thus, the trial court found that the officer had failed to observe the defendant during the restroom break, and we did not disturb that finding.

Further, as we shall note, although the defendant's testimony that he did not put anything into his mouth or vomit during the 20-minute period was crucial to our holding, his testimony that he did not regurgitate or belch was not necessary. This was because, then as now, neither belching nor regurgitating was listed in the regulation as an act that would affect the admissibility of the test result.

the testing process—which was tantamount to holding that the defendant suffered no prejudice. The evidence proved that the test had not been rendered unreliable by the officer's failure to observe the defendant continuously; the defendant testified that he had not performed any act that the regulation listed as endangering the reliability of the test. *Id.*

¶ 28    Here, the determinative question is whether the evidence compensated sufficiently for Schmitt's failure, for more than two minutes, to observe defendant in any way.  Plaintiff argued that the compensation was provided by (1) Schmitt's testimony that, upon returning from his first absence, he saw nothing to suggest that defendant vomited or ate or drank anything while Schmitt had been away; (2) Schmitt's testimony that, after returning from his first absence, he asked defendant whether he had vomited, burped, or eaten in the preceding half hour; and (3), most important, the video.

¶ 29    The trial court did not find this evidence sufficient.  The court did not specifically discuss the first factor, but we can infer that it did not conclude that Schmitt's inference based on what he saw was persuasive evidence of what defendant actually did.  The court explicitly rejected the second factor, noting that, when defendant responded to the question, he was not under oath and was presumably impaired to some degree, given that he had failed field sobriety tests and had concededly been validly arrested for intoxicated driving.  Moreover, the court noted, even a sober person doing his best to remember might have trouble saying with any certainty whether he had belched in the preceding half hour.

¶ 30    The court also rejected the third factor, the video, on which plaintiff primarily relies on appeal.  The court explained at some length why it considered the video an inadequate *post hoc* substitute for Schmitt's actual observation (even in the mode of Ray Charles) of defendant.  The court noted that the video did not fully capture defendant's face; it was "from the top looking

down" and a viewer could not "even see his mouth the vast majority of the time." Thus, the court concluded, the viewer could not really say with any assurance what was "happening with [defendant's] mouth" while Schmitt was absent.

¶ 31    We cannot lightly dismiss the trial court's concerns. Schmitt's laxity created serious problems. Without doubt, the better practice, at least to ensure the creation of a sufficient foundation for the breath-test result, would have been to remain in the booking room with defendant for the full 20-minute observation period. But, for whatever reason, Schmitt attended to business elsewhere for a portion of that time. The issue is whether his failure to observe defendant continuously was fatal to reliance on the result of the breath test.

¶ 32    We hold that it was not. We have viewed the video with care. Despite its limitations, which the court noted, it compensated for Schmitt's lapses. (We do not consider whether Schmitt's observations upon returning from his first absence, or defendant's response to his inquiry at that time, provided any additional support for admitting the test result.)

¶ 33    We note that the regulation states that during the 20-minute observation period "the subject shall be deprived of alcohol and foreign substances and shall not have vomited." 20 Ill. Adm. Code 1286.310(a)(1) (2004). This language clearly categorizes drinking alcohol and vomiting as actions that (as a legal matter) will render a test result unreliable. Also, the reference to "foreign substances" is broad enough to comprehend eating, drinking, and smoking, as case law has recognized. It is noteworthy, however, that although the trial court and the parties seem to have assumed that the regulation also presumes that belching renders a test result unreliable, the text of the regulation does not support this assumption. Belching is not mentioned. Indeed, in *People v. Bertsch*, 183 Ill. App. 3d 23 (1989), we held that, because the regulation's plain language did not include belching as a disqualifying act, we would not read it into the regulation.

*Id.* at 27. Thus, the lack of belching during the 20-minute period is not a foundational requirement for the admission of a breath-test result. *Id.* We did hold that " 'belching' [is] in the nature of an affirmative defense" that a defendant may raise in order to establish the result's inaccuracy despite compliance with the foundational requirements for admission. *Id.* We then affirmed the trial court's grant of the defendant's motion to exclude the result on the ground that he had proved this defense. *Id.* To the extent that this defense remains viable, defendant here did not raise it. Thus, *Bertsch* supports our conclusion that the possibility that defendant belched during the 20-minute observation period does not affect whether the test result is admissible.

¶ 34    At this point, we must also note that the regulation does not include regurgitation as a disqualifying act. The regulation formerly did state that the person to be tested "shall not have *regurgitated or* vomited" during the 20-minute observation period and that "[i]f the subject *regurgitates or* vomits," the process shall begin again. (Emphases added.) 20 Ill. Adm. Code 1286.310(a), adopted at 25 Ill. Reg. 3023, 3042-43 (eff. Feb. 1, 2001). However, in 2004, the regulation was amended to delete the language that we have just emphasized. 20 Ill. Adm. Code 1286.310(a), amended at 28 Ill. Reg. 10017, 10038 (eff. June 30, 2004). Therefore, regurgitation also is not included as a disqualifying act. (Whether regurgitation might be raised as an affirmative defense is not before us now, as it was not so raised here.)[2]

---

[2] We note that some postamendment opinions list regurgitation as a disqualifying factor. See, *e.g.*, *People v. Caraballo*, 2019 IL App (1st) 171993, ¶ 24; *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 19; *People v. Aleliunaite*, 379 Ill. App. 3d 975, 980 (2008). In each of those opinions, the statement was *dicta* and was based on *People v. Orth*, 124 Ill. 2d 326, 340 (1988), which was decided when the regulation did list regurgitation as a disqualifying act. Evidently, the courts that issued those opinions simply overlooked that the regulation had been amended

after *Orth* was decided but before the defendants had been tested.

More complicated is our opinion in *Ebert*. There, we initially cited the regulation in its applicable form, which, as now, did not list either belching or regurgitation as a foundational disqualifier. *Ebert*, 401 Ill. App. 3d at 961. We then noted that, at the hearing on the defendant's motion *in limine* to exclude the test result, the State argued that the officer's failure to observe the defendant continuously for 20 minutes was not crucial, because the defendant's testimony that "he did not vomit, belch, regurgitate, or place a foreign substance in his mouth" showed that the test result was reliable. *Id.* at 960. In holding that the test result was admissible, we explained in part that "defendant's own testimony establishe[d] that he did nothing to impair the accuracy of the test—he did not vomit, belch, regurgitate, or place a foreign substance in his mouth." *Id.* at 965. Our inclusion of "belch" and "regurgitate" might be taken to imply that we considered those two acts as disqualifying. That, of course, would have been inaccurate, since the regulation had long since been amended to exclude belching and regurgitation as disqualifying.

However, immediately after making this statement, we addressed the defendant's alternative argument that the test result was inadmissible because the first test indicated the presence of mouth alcohol. In rejecting this argument, we noted that, according to the evidence at the hearing, "a reading of mouth alcohol can be the result of vomiting, but can also be the result of regurgitating, belching, or an exceptionally high blood alcohol level. Therefore, the first Breathalyzer result does not establish that defendant vomited and it was not necessary to have him rinse his mouth with water." *Id.* This explanation showed that we recognized vomiting as a disqualifying act under the regulation but recognized equally that belching and regurgitation were not disqualifying acts. Thus, *Ebert* cannot properly be read as erroneously

¶ 35    Thus, in evaluating the sufficiency of the video as compensation for Schmitt's failure to observe defendant for the full 20-minute period, we shall limit ourselves to the video as it relates to establishing whether defendant did not vomit or place a foreign substance into his mouth.

¶ 36    We acknowledge that the angle of the video camera showed defendant from some height instead of at his level as he sat on the stool. At times, defendant put his head down, obscuring his mouth from the camera. Nonetheless, for the periods at issue, the video is sufficiently clear for our purposes.

¶ 37    During Schmitt's first absence, which lasts from 12:23:48 through 12:26:21 a.m., defendant remains seated on his stool. At almost all times, both hands are visible; either the left hand rests on the right wrist or the hands are clasped. It is clear that defendant does not vomit or put anything into his mouth. During the officer's second absence, which lasts from 12:28:27 through 12:28:50 a.m., defendant sits on the stool with his hands clasped and his mouth visible to the camera. It is clear that he does not vomit or put anything into his mouth.

¶ 38    The video thus demonstrates to our satisfaction that during Schmitt's absences defendant did not commit a disqualifying act. The trial court was concerned primarily that the camera did not show defendant's mouth. However, this limitation of the recording is of no consequence, as Schmitt ascertained before leaving that defendant had no foreign substance in his mouth and the video negates any possibility that he put anything into his mouth while Schmitt was gone. Although the video does not foreclose the possibility that defendant belched or regurgitated while Schmitt was absent, that possibility does not affect whether the video compensated for Schmitt's deviation from the continuous-observation requirement.

_____

perpetuating the standards of the preamendment regulation.

¶ 39 We hold that the trial court erred in granting defendant's motion *in limine* to exclude the breath-test result. We commend the court for its concern with the questionable practice in this case, but we cannot accept its conclusion that the officer's deviation from the prescribed procedure warranted the exclusion of the evidence.

¶ 40 The judgment of the circuit court of McHenry County is reversed, and the cause is remanded.

¶ 41 Reversed and remanded.